446 P.2d 7

Shirley NAGEL, aka Shirley Feinstein, Appellant and Cross-Appellee,

v.

FIELD SERVICES, INC., Robert Pinder and Jane Doe Pinder, his wife, Conn-Pozen Design Associated, Inc., and John G. Wells, Appellees and Cross-Appellants.

No. 8488.

Supreme Court of Arizona.

In Division.

Oct. 24, 1968.

Spector & Johnson, by Bernard L. Bebeau, Phoenix, for appellant and cross-appellee.

Herbert Mallamo, Phoenix, for appellees and cross-appellants Field Services, Inc., Robert Pinder and Jane Doe Pinder, and John G. Wells.

Welliever, Smith, Holt & Smith, by Robert J. Welliever, Phoenix, for appellee Conn-Pozen Design Associates, Inc.

McFARLAND, Chief Justice:

This is an action to establish a constructive trust. Plaintiff-appellant Shirley Feinstein Nagel, hereinafter referred to as Nagel, owned an undivided one-third of a piece of real property located at the Southwest corner of Central Avenue and Maryland in Phoenix, Arizona. Another one-third was owned by David Tasky, and the remaining one-third by Arthur Petersen. These three parties obtained a mortgage commitment for $125,000 on the land and upon a twelve-unit apartment building to be constructed on it. They also obtained interim financing, and proceeded to build the apartments.

By February 15, 1960 the bills which had been paid, plus those due and owing, exceeded the $125,000 available by more than $50,000. Creditors were exerting pressure, mechanics' liens were imminent, and the situation was critical. Nagel had invested over $30,000; it does not appear in the

record how much the other two co-owners had in the project.

Nagel contacted Robert Pinder, an old friend in whom she had complete confidence, and he promised to help her out of her difficulties. First, however, he explained that it was necessary to transfer the title to Field Services, Inc., a corporation which he controlled, and in which he owned a majority of the stock. Tasky and Petersen decided to accept their losses. One conveyed to Field Services for $10,-000; the other, for $5,000. Nagel, however, preferred to stay with the project in the hopes that Pinder's money and know-how would reduce her loss and perhaps even turn it into a profit. She conveyed her one-third interest to Field Services upon Pinder's oral promise (to use the words of his answer) to "execute a trust agreement evidencing, among other things, the interest of · plaintiff." Her deed to Field Services was dated April 12, 1960, and was recorded a day or two later.

We think that it appears quite clearly from the record that the unpaid bills, threatened legal actions, and lack of time made it impossible to market the property except as a distress situation, and made it very difficult to manage the project as an income property. Pinder entered the picture partly to help Nagel salvage as much as possible from her investment, and partly to make a profit for himself while being helpful. The oral agreement appears not to have been understood in the same light by both parties. A letter from Pinder to Nagel, dated June 29, 1960, states that

> "At such time as our contributions have been finally determined, our respective interests in the apartments will be computed, based upon our respective contributions, and at that time, the undersigned will hold your interest in trust for your benefit, or will assign and convey such interest to you at your option."

That letter effectively refutes the claim of Field Services that Nagel's interest was to be in the proceeds, and not in the property.

■ Proposed findings were filed by both sides. Nagel's proposed· that the court find that

> " * * * it was further orally agreed * * * that Mrs. Nagel's * * * undivided ⅓ interest in said property later would be redefined based upon and in proportion to the respective investments of Mrs. Nagel and Field Services, Inc. in said property."

This is unusual. Ordinarily, persons associated in a joint venture or a partnership are governed by accepted principles of accounting, which require that advances by the partners be paid off first, and any profits after such payments be shared in the ratio agreed upon the start. Here a different arrangement was agreed upon —namely, that as Field Services continued to pour money into the project its interest would increase, and that when its investment of funds ceased the respective interests of Field Services and Nagel would be determined by how much each had put into the enterprise. This viewpoint, advanced by Nagel's own proposed findings effectively refutes the proposition advanced by her that she was to continue to have a one-third interest regardless of the ratio of her investment to that of Field Services.

In October 1960 Field Services and Pinder gave to Conn-Pozen Design Associates, Inc., hereinafter referred to as Conn, a note secured by a second mortgage on the property. The note was not paid as promised. Conn foreclosed, and the apartments were sold for the balance of the note, plus costs and attorney's fees, which totaled approximately $25,000. On January 15, 1962—the last day of the redemption period —Field Services redeemed the property, and on the same day conveyed it by warranty deed to John G. Wells. A few months later Wells started an action to quiet title against Nagel, and that suit was consolidated with Nagel's. The trial court, sitting without a jury, awarded Nagel an undivided one-seventh interest in the prop-

erty. Nagel appealed, and a cross-appeal was filed by Pinder, Field Services, and Wells.

The length of the above statement of facts is due to the highly unsatisfactory state of the record on appeal. Despite the fact that the reporter's transcript was designated as part of the record, we are advised that it was never ordered transcribed, and the reporter is no longer available. Most of the above facts are either clear, or are settled by the trial court's extensive findings of fact.

The court found that all parties agreed and intended that Mrs. Nagel "would have an interest in the property, which was later to be reflected by a formal written agreement setting forth her exact interest in the property"; that Nagel owned an undivided one-third interest in the property prior to her conveyance to Field Services; that the parties and their attorneys met to determine the extent of Nagel's interest in the property, and, while they were unable to agree on that matter, they did agree that Field Service's investment in the property was $70,000 and Nagel's was $30,000; that Pinder was the majority stockholder of Field Services, in control of it, and acted for it; that a relation of trust and confidence existed between Nagel and Pinder; that Wells had both actual and constructive notice of Nagel's claim when he acquired the property from Pinder.

Nowhere in the record is there any evidence of the consideration that was paid to Field Services by Wells for the property. One exhibit in the file is a balance sheet of Field Services as of June 30, 1960. It lists the property as an asset of the corporation, and ascribes to it a value of over $300,000! Attempts to cross-examine Wells, by deposition, revealed that he knew nothing about the transaction and was only the nominal title-holder for a corporation which he admitted knew of Nagel's claim. The lack of a transcript prevents us from knowing the amount of the consideration paid to Field Services, and no mention of it is made in the briefs or in the findings.

This case would present no difficulty were it not for the trial court's Conclusion of Law No. 9, which we reproduce here verbatim:

"That the right, title and interest of Mrs. Nagel in said property is that part of her undivided ⅓ interest in said property which the defendant, Field Services, Inc., held as constructive trustee from April 14, 1960 as is limited and determined by the ratio which Mrs. Nagel's investment bears to the investment of Field Services, Inc: to wit, $30,000 and $70,000, with the resulting interest of Mrs. Nagel being an undivided ½ interest in said property."

The attorneys for the parties were unable to explain how the trial court arrived at the one-seventh interest. In his brief, the attorney for Field Services argues that the court took the $100,000 invested by the parties, added the $125,000 first mortgage, making $225,000, and figured that Nagel was thus entitled to 30/225, which, when reduced, comes out close enough to one-seventh so the court might have taken the latter fraction as being the closest round-figure available. However, when asked in oral argument, how the court arrived at its conclusion, he replied that the finding was "unintelligible." Nagel's attorney, in his brief, has been unable to explain the reasoning. He argues that the court found that Nagel's interest was one-third, and then reduced it to one-seventh. However, the finding does not state that Nagel's interest is one-third; it states that it is "that part of her undivided ⅓" that is determined by the ratio of the parties' investments in the property.

It is obvious to us that the final figure of one-seventh came from a double error of the trial court. The first error was to conclude from the 70/30 ratio of the parties' investments that Nagel's part was three-sevenths. If that were correct, then Field Service's part is seven-sevenths, and we have a total of ten-sevenths! Obviously, when the ratio is three to seven, the smaller part is three-tenths, and the larger

part is seven-tenths, making a total of ten-tenths.

The second error was to apply the three-sevenths figure to the original one-third figure, which makes three-twenty-firsts, or one-seventh. Had the court determined that Nagel had a one-third interest, this could be defended. Had it determined that Nagel's interest was thirty-one-hundredths, that could be defended, and, in fact, would be more in keeping with the parties' actual agreement. But, to take one of the fractions and multiply it by the other cannot be defended or explained.

■ In spite of the Delphic character of the trial court's Conclusion of Law No. 9, the record fails to show that either party ever obtained from the judge an explanation of his arithmetic. The trial court's finding of a constructive trust is clearly justified—nay, compelled—by the evidence. The same is true of his finding that Wells took the property with both actual and constructive knowledge of Nagel's claim. The judgment of the Superior Court is modified, quieting title to a thirty per cent interest in Nagel and a seventy per cent interest in Wells, subject to any prior liens of persons not parties to the two actions.

Judgment affirmed as modified.

UDALL, V. C. J., and STRUCKMEYER, J., concur.